**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | *No. 2:13-cr-176-GZS* |
| ) | |
| **RICHARD MAGEE,** ) | |
| ) | |
| **Defendant** ) | |

**MEMORANDUM DECISION AND ORDER**
**ON REQUEST FOR FRANKS HEARING**[1]

The defendant seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and

its progeny with respect to alleged material false statements and omissions in an October 2, 2013,

affidavit of United States Drug Enforcement Administration Task Force Agent John Bourque

submitted in support of an application to search the defendant's residence. *See* Defendant's

Motion to Suppress/Exclude Evidence and Request for Testimonial Hearing, including *Franks*

Hearing (ECF No. 122) at [8]-[14], [17].

At the government's request, I met with counsel for both parties on June 24, 2014, to

discuss, among other things, the anticipated scope of a suppression hearing scheduled for July 21,

2014. I directed that counsel meet and confer by June 26, 2014, regarding a possible, incorporated

*Franks* hearing and, if they were unable to resolve their differences, that the defendant file a

supplemental brief by July 1, 2014, and the government a response by July 3, 2014, with no reply

permitted. *See* ECF No. 183. With the benefit of those helpful briefs, I now deny the defendant's

*Franks* hearing request.

---

[1] The determination whether to hold a *Franks* hearing is nondispositive. *See, e.g., United States v. Williams*, No. 2:12-cr-463-JCM-VCF, 2014 WL 585790, at *2 n.3 (D. Nev. Feb. 14, 2014) (noting that "*Franks* hearings involve two steps" – determining whether a defendant has made a sufficient showing to warrant a hearing and, if so, holding a hearing and determining whether probable cause existed to issue a warrant; "Because the first step is only a motion for a hearing, [a United States Magistrate Judge] may dispose of the motion with an order.")

A *Franks* hearing is required if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" *United States v. D'Andrea*, 648 F.3d 1, 12-13 (1st Cir. 2011). (citation and internal quotation marks omitted). "Omission of a material fact from the affidavit supporting a warrant is sufficient to trigger a *Franks* hearing." *United States v. Reiner*, 500 F.3d 10, 14 (1st Cir. 2007).

"An allegation is made with 'reckless disregard for the truth' if the affiant in fact entertained serious doubts as to the truth of the allegations or where circumstances evinced obvious reasons to doubt the veracity of the allegations in the application." *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013) (citation and internal quotation marks omitted). "In the case of allegedly material omissions, recklessness may be inferred where the omitted information was critical to the probable cause determination." *Id.* at 98-99 (citation and internal quotation marks omitted).

During the parties' meeting, the government stipulated to some of the facts that the defendant sought to prove in a *Franks* hearing. *See* Defendant's Memorandum Submitted in Support of Request for *Franks* Hearing made in Defendant's Motion to Suppress [Document # 122] ("Defendant's Suppl. Memo") (ECF No. 187) at [2]. Nonetheless, the government contests that certain statements are false and that any of the alleged false statements or omissions is material. *See id.*; *see also* Government's Memorandum of Law in Response to Defendant's Memorandum in Support of *Franks* Hearing ("Gov't Suppl. Memo") (ECF No. 189) at 8. For the reasons that follow, I find that the defendant fails to make the requisite substantial preliminary showing to warrant a *Franks* hearing.

### 1.    Omission of Fact That Confidential Informant Had Died

Bourque stated that, in August 2011, a confidential information ("CI") told law enforcement personnel that the defendant was involved in the distribution of kilogram quantity amounts of cocaine from Massachusetts to Maine, and, on September 26, 2011, under the direction and control of a federal law enforcement agency, a CI purchased cocaine from the defendant. *See* Affidavit [of Bourque] ("Bourque Aff."), contained in Application for a Search Warrant, Exh. 1 (ECF No. 188-1) to Defendant's Suppl. Memo, ¶ 6. The government stipulates that the CI involved in the controlled buy had died as of the time the affidavit was executed. *See* Defendant's Suppl. Memo at [4]. The defendant theorizes that the omission was made to overcome a fatal staleness problem, misleading the court into believing that the government would be able to produce the CI whose allegations are the foundation of the affidavit: that the defendant was a "known drug dealer." *See id.* at [5]-[6]. However, as the defendant acknowledges, *see id.* at [5], an affiant may offer hearsay in support of a search warrant, *see, e.g., Gifford*, 727 F.3d at 99. What matters is "whether the affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information[.]" *Id.* As the government observes, *see* Gov't Suppl. Memo at 5-6, the defendant fails to explain how the fact of the CI's death undermines the accuracy or reliability of any statements he made in 2011. The government acknowledges that the 2011 information, standing alone, would be stale but correctly notes that the balance of the affidavit discusses contemporaneous evidence garnered in September 2013. *See id.* at 6; Bourque Aff. ¶¶ 7-24.

## 2. Omission of Clarification That Word "Cocaine" Was Never Used in Intercepted Calls

The defendant complains that Bourque omitted to clarify that the word "cocaine" was not used in any intercepted calls discussed in paragraphs 8 through 24 of his affidavit (pertaining to calls between the defendant and David Jones spanning the period from September 16-30, 2013), arguing that the omission was material because Bourque's interpretation of the calls is essential to the finding of probable cause. *See* Defendant's Suppl. Memo at [6]; Bourque Aff. ¶¶ 8-24. The omission neither creates a misimpression nor is material. As the government notes, *see* Gov't Suppl. Memo at 6-7, Bourque made clear in summarizing and discussing the intercepted calls that the word "cocaine" was not used by either Jones or the defendant and that he interpreted the callers' terminology to refer to that substance, *see* Bourque Aff. ¶¶ 8-24.

## 3. Asserted False Statements That Jones Was Observed Meeting with Defendant and Entering His Residence on September 20, 2013

Bourque stated that, on September 20, 2013, after intercepting a call between the defendant and Jones believed to reflect a planned cocaine transaction, agents conducting surveillance observed Jones meeting with the defendant and Joshua Magee, the defendant's son, outside of the defendant's residence and then entering the residence, following which Jones exited the residence a short time later and departed in a vehicle. *See id.* ¶ 14. The defendant points out that Paul Buchanan, one of the lead case agents in this matter, testified under oath at an April 14, 2014, hearing on a motion to suppress filed by co-defendant Craig Mercer that agents observing the defendant's residence apprised Buchanan that they had observed Jones and his girlfriend arrive at the defendant's residence in Jones' Cadillac, park in the driveway, walk up the driveway, and then

depart in the Cadillac, and that Buchanan further testified that agents did not observe Jones meet with the defendant or pick anything up from him. *See* Defendant's Suppl. Memo at [7]; Transcript of Proceedings ("Transcript") (ECF No. 172) at 20-21, 30. The defendant argues that Bourque's false statement is material because the assertion that Jones met with him and entered his home was essential to the government's showing that evidence of alleged cocaine distribution likely would be found in his home and was intended to bolster Bourque's interpretation of the intercepted calls and Bourque's claim that the defendant was a known drug dealer. *See* Defendant's Suppl. Memo at [8].

The defendant falls short of making a substantial preliminary showing that Bourque falsely stated that agents observed Jones meeting with him. As the defendant acknowledges, *see id*. at [7], Buchanan prepared a report of investigation dated September 21, 2013, in which he stated that Task Force Agent Mike Coffin observed Jones and his girlfriend meet with the defendant in the driveway of the defendant's residence, *see* Report of Investigation dated 9/21/2013 by Special Agent Paul C. Buchanan ("Buchanan Report"), Exh. 2 (ECF No. 188-3) to Defendant's Suppl. Memo, at 2, ¶ 6. In addition, the government offers Coffin's sworn affidavit stating that he personally observed Jones and the defendant meet in the defendant's driveway, and that they were joined by a third individual whom Coffin believed to be Joshua Magee. *See* Affidavit [of Michael Coffin] (ECF No. 190-2), attached to Gov't Suppl. Memo, ¶¶ 3-5. The government acknowledges that Bourque incorrectly stated that the defendant and Jones entered the defendant's residence. *See* Gov't Suppl. Memo at [2]. However, as the government argues, *see id*. at 2-3, that is immaterial. What matters is that, consistent with the expected drug transaction, Jones and the defendant were observed meeting for a brief period of time in the driveway of the defendant's residence. For the same reason, the presence and identity of a third individual are immaterial.

**4.      Omission and Asserted False Statements Regarding Defendant's Conduct at Ruski's**

Bourque stated that, after Jones departed the defendant's residence, agents followed the defendant as he drove to "Ruski's," where they observed him exit his vehicle carrying something under his arm, approach a gold Saturn later found to belong to Mercer, open the driver's door and bend over into the interior, move around the interior, stand up, approach Mercer, and speak to him on the street.  *See* Bourque Aff. ¶ 14.  Bourque stated that Mercer then departed, and a short time later police stopped his vehicle, discovering approximately two ounces of a substance that field-tested positive for the presence of cocaine.  *See id.*

The government stipulates that Bourque omitted agents' observations that the defendant gave the package that he was carrying to a bartender inside of Ruski's.  *See* Defendant's Suppl. Memo at [8].  The defendant asserts that the statements that he was observed opening the door of the Saturn and bending into and moving around its interior are false, citing Buchanan's testimony during the Mercer suppression hearing, and statements in his report of investigation, that he and/or other agents observed the defendant (i) lean into an open window on the driver's side of the Saturn and appear to converse with Mercer, who was standing on the sidewalk next to the passenger's side, (ii) enter Ruski's, where he handed the package to a bartender, (iii) sit down outside of Ruski's for several minutes and socialize with Mercer, and, (iv) after Mercer got into the driver's seat of the Saturn, lean into the car through the open passenger's side window and continue to converse with him, after which Mercer drove away.  *See id.* at [9]; Transcript at 23-26; Buchanan Report at 3, ¶¶ 9-11.

The defendant argues that the omission and assertedly false statements were intended to mislead the court into forming the impression that he placed the package that he was carrying into

the Saturn driven by Mercer, conferring probable cause to believe that he supplied the cocaine seized from the Saturn. *See* Defendant's Suppl. Memo at [9]-[10].

The omission of the fact that the defendant left the package he was carrying with the bartender does leave the troubling false impression that he left the package in the Saturn. Nonetheless, I am persuaded that the omitted information was not material to probable cause analysis. Even had this fact been included, the court could have found probable cause to believe that the defendant supplied cocaine to Mercer, given (i) Bourque's description of intercepted calls between the defendant and Jones from September 16-20, 2013, which Bourque construed as describing Jones' past and planned purchases of cocaine from the defendant, (ii) agents' observation on September 20, 2013, of an interaction between the defendant and Jones that was consistent with such a purchase, (iii) the defendant's request during a call intercepted on September 20, 2013, that Jones tell "Craig" to wait for the defendant at Ruski's, (iv) agents' observations that, upon reaching Ruski's, the defendant opened the driver's side door and bent over into the interior of the Saturn and then spoke with Mercer, and (v) the discovery by police of cocaine in that vehicle shortly after Mercer drove away in it. *See* Bourque Aff. ¶¶ 8-14.[2]

_____

[2] I do not find Bourque's statement that the defendant "was observed opening the driver's door and bending over into the interior[,]" Bourque Aff. ¶ 14, false. The government offers the sworn affidavit of Task Force Agent Joey Brown, who was conducting surveillance from inside Ruski's on the day in question, that he observed the defendant approach the Saturn, open the driver's side door and bend down as if he were accessing the passenger compartment, although Brown was unable to see what transpired after the defendant bent down because the passenger side of the vehicle, which was facing Ruski's, blocked his line of sight into the passenger compartment. *See* Affidavit [of Joey Brown] (ECF No. 190-1), attached to Gov't Suppl. Memo, ¶¶ 3-4. Brown avers that, a short time later, he observed the defendant stand up and close the door, then walk around the vehicle to the sidewalk. *See id.* ¶ 5. The government argues, and I agree, that the fact that one agent observed activity that an agent with a different vantage point did not observe does not render an assertion in an affidavit false. *See* Gov't Suppl. Memo at 4. The government offers no backup for Bourque's further assertion that "[a]gents observed [the defendant] move around the interior[.]" Bourque Aff. ¶ 14. This, too, is troubling; however, the assertion is not critical to probable cause analysis. What matters, as the government notes, *see* Gov't Suppl. Memo at 4-5, is that agents observed the defendant bending or leaning into the empty car immediately upon arriving at Ruski's. As the government points out, *see id.*, that is true with respect to Buchanan's observations, as well.

### 5.    Omission of Fact That Agents Did Not See Defendant Place Anything in Vehicle or Hand Anything to Mercer

The defendant contends that this omission, together with the omission and asserted false statements discussed above in section 4, were intended to mislead the court into believing that agents saw the defendant place the package that he had been carrying in the Saturn. *See* Defendant's Suppl. Memo at [10]. As the government points out, *see* Gov't Suppl. Memo at 7, Bourque never claimed that agents saw any activity of any nature occur inside of the vehicle. The omission of this information leaves no misimpression and is immaterial to a probable cause determination.

### 6.    Asserted False Statement Regarding Ownership of the Saturn

Bourque stated that the defendant "approach[ed] a gold Saturn later found to belong to Craig Mercer." Bourque Aff. ¶ 14. The government stipulates that Mercer did not own the Saturn and that agents knew at the time of the incident and of the execution of the Bourque Affidavit that the Saturn had New Hampshire license plates and was registered to a different individual, who resided in New Hampshire. *See* Defendant's Suppl. Memo at [10]. The defendant reasons that ownership of the vehicle was material because police seized the cocaine from a work boot in the Saturn, not from Mercer's person. *See id.* at [10]-[11]. The government rejoins that, as used in the context of the affidavit, the word "belong" denoted that Mercer had sole lawful possession and control of the vehicle, not that he was its legal owner or registrant. *See* Gov't Suppl. Memo at 5. The word "belong" is defined, in its relevant sense, as "[t]o be the property or concern of." Webster's II New Riverside Univ. Dictionary 165 (1994). Certainly, the Saturn, which Mercer

was driving, was his "concern."  In any event, in the totality of the circumstances, Mercer's ownership (*versus* control over) the vehicle on the day at issue was not essential to a finding of probable cause to believe that the defendant had placed cocaine inside the vehicle.  *See, e.g., United States v. Winchenbach*, 197 F.3d 548, 555-56 (1st Cir. 1999) (An officer's determination that a crime has been committed need not be "highly probable"; it need only have been "reasonable" to satisfy the standard of probable cause.).

### 7.        Omission of Fact That Cocaine Found in Work Boot

The defendant finally complains that Bourque omitted to note that cocaine was recovered from inside a man's work boot on the front passenger side floor of the Saturn, not from Mercer's person.  *See* Defendant's Suppl. Memo at [11].  He reasons that this omission, in combination with other asserted omissions and false statements, was essential to the court's finding of probable cause.  *See id.*  However, as the government contends, *see* Gov't Suppl. Memo at 7, the precise location of the cocaine within the passenger compartment was immaterial.  What mattered was that cocaine was found inside the passenger compartment after the defendant was observed either bending down into or leaning into that compartment.

For all of these reasons, the defendant's request for a *Franks* hearing is **DENIED**.

### *NOTICE*

**In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.**

**Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.**

Dated this 11th day of July, 2014.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
